FILED
2014 Apr-09 PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ADP COMMERCIAL LEASING, LLC, et al,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**GADSDEN BUGGY WORKS, LLC, et al,** )<br>)<br>**Defendants.** ) | **Case No.: 4:13-CV-2031-VEH** |

## MEMORANDUM OPINION

The plaintiffs in this case are ADP Commercial Leasing, Inc. ("ADP Commercial"); ADP Dealer Services ("ADP Dealer"); IP Networked Services, Inc. ("IP Networked"); and Dealix Corporation ("Dealix"). They have collectively filed a Motion for Default Judgment (doc. 13) that is presently before the court. Under Federal Rule of Civil Procedure 55, the plaintiffs ask that this court enter a default judgment against the defendants – Gadsden Buggy Works, L.L.C. ("Gadsden Buggy") and Steve Moultrie. For the following reasons, the court will **GRANT** the plaintiffs' motion. The court will enter a contemporaneous order in accordance with this opinion.

**STANDARD OF REVIEW**

The Clerk has entered default against the defendants. Doc. 11. The court thus accepts as true the plaintiffs' factual allegations and considers the defendants' liability established. *See, e.g.*, *AutoTec, L.L.C. v. Auction Access Auto, Inc.*, 2:12-cv-00896-RDP, 2012 WL 2357951, at *2 (N.D. Ala. June 18, 2012) ("Upon default, the well-pleaded allegations of a complaint are taken as true . . . Because Defendants have previously been declared in default . . . their liability is established.") (internal citations omitted); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

**STATEMENT OF THE CASE**

With this standard in mind, the court summarizes the following basic facts regarding the case. This action arises out of a series of contracts formed between the plaintiffs – four corporate affiliates – and an automobile dealership, Gadsden Buggy. Mr. Moultrie was the dealership's president, and he guaranteed one set of contracts. The contracts concerned the provision of automotive industry services and equipment.

Specifically, in January 2007, Gadsden Buggy entered into a contract entitled

"Dealer Services Agreement" with Dealix under which the dealership agreed to pay Dealix for certain customer referral services. In November 2012, the dealership entered into a contract entitled "Master Services Agreement" with ADP Dealer under which the dealership agreed to pay ADP Dealer for certain maintenance, equipment rental, support, and licensing services. During that same month, the dealership entered into a contract entitled "Master Services Agreement" with IP Networked under which the dealership agreed to pay IP Networked for certain telephone and related services. Finally, in February 2013, Gadsden Buggy entered into a contract with ADP Commercial for the lease of certain computer and other business equipment. Mr. Moultrie guaranteed – in writing – the dealership's obligations under this lease. Gadsden Buggy and Mr. Moultrie breached these agreements by failing to make the prescribed contractual payments.

On November 5, 2013, the plaintiffs filed a Complaint against the defendants in this court. Doc. 1. The defendants were served with a Summons and a copy of the Complaint on December 3, 2013. Doc. 7 at 2; Doc. 8 at 2. On December 27, 2013, the defendants filed a Motion for Entry of Default. Doc. 9. On January 2, 2014, the defendants filed a supporting affidavit by Henry Callaway, their attorney. Doc. 10. The Clerk of Court entered default on January 14, 2014. Doc. 11. On February 4, 2014, the defendants filed the present Motion for Default Judgment. Doc. 13. They

simultaneously filed several supporting affidavits. Doc. 14-19.

## DISCUSSION

### I.     Introduction

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. It provides, in pertinent part:

> (a) **Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) **Entering a Default Judgment.**
>
> (1) **By the Clerk**. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) **By the Court.** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:
>
>> (A) conduct an accounting;
>> (B) determine the amount of damages;
>> (C) establish the truth of any allegation by evidence; or

>	(D) investigate any other matter.

Fed. R. Civ. P. 55.

The court's analysis of the plaintiffs' Motion involves two steps. The court must:

>	•	establish it has personal and subject matter jurisdiction; and then

>	•	ensure that the plaintiffs have satisfied Rule 55 requirements and are thus entitled to the default judgment they seek.

*See Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.") (citations omitted); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[1] (explaining that "a defendant's default does not in itself warrant the court entering a default judgment" and that "[t]here must be a sufficient basis in the pleadings for the judgment entered") (footnote omitted).

## II.	The Court Has Jurisdiction Over This Action.

### A.	*Personal Jurisdiction*

The court must establish personal jurisdiction in every case before it has power to render any judgment. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,

---

[1] This decision constitutes binding precedent within this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

456 U.S. 694, 702 (1982). A court obtains personal jurisdiction over the parties when the plaintiff properly serves the Complaint and Summons upon the defendant. *Royal Lace Paper Works v. Pest-Guard Prods.*, 240 F.2d 814, 816 (5th Cir. 1957).[2] The record shows that the plaintiffs served the defendants with a Summons and copy of the Complaint on December 3, 2013. Doc. 7 at 2; Doc. 8 at 2. Accordingly, the court has personal jurisdiction over the parties.

### B.  Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction over civil suits between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. ADP Commercial is a Delaware limited liability company whose sole member is ADP, Inc. – a Delaware corporation with its principal place of business in New Jersey. Doc. 1 ¶ 1. Likewise, ADP Dealer and IP Networked are each Delaware corporations with principal places of business in New Jersey. *Id.* ¶ 2,4. Therefore, these three plaintiffs are citizens of Delaware and New Jersey for jurisdictional purposes. The final plaintiff, Dealix, is a California corporation with its principal place of business in New Jersey. *Id.* ¶ 3. It is thus a citizen of those two states for jurisdictional purposes.

Gadsden Buggy is an Alabama limited liability company whose members are

---

[2]This decision constitutes binding precedent within this Circuit. *See* note 1, *supra*.

Frank Moultrie, Michael E. Stephens, and Rhonda E. Hoggle – all Alabama citizens. *Id.* ¶ 5. Steve Moultrie is also an Alabama citizen. *Id.* ¶ 6. The defendants are thus Alabama citizens for jurisdictional purposes.

As detailed in their supporting affidavits, the plaintiffs claim that the defendants owe them the following amounts, exclusive of attorney's fees and costs: $403,901.79 to ADP Dealer; $116,252.15 to ADP Commercial;[3] and $76,347.08 to IP Networked. Doc. 13 ¶ 2. A sum exceeding $75,000 is therefore "in controversy" regarding these three plaintiffs' claims. Dealix claims that Gadsden Buggy owes it $9,870.00, which is clearly below the jurisdictional minimum. *Id.* The defendants rightfully maintain, however, that the court has supplemental jurisdiction over this claim. Doc. 1 ¶ 8 (citing 28 U.S.C. § 1367(a)). In light of all these facts, the court finds that it has subject matter jurisdiction over the entire action.

### III.     The Clerk Properly Entered Default Against the Defendants.

Rule 55(a) directs the Clerk of Court to enter a party's default when that party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). As noted, the plaintiffs properly served the defendants on December 3, 2013. Doc. 7 at 2; Doc. 8 at 2. The defendants then failed

---

[3] Steve Moultrie guaranteed the obligations to ADP Commercial but did not guarantee the other contracts. Doc. 14 ¶ 2.

to respond to the Complaint within 21 days of service, as required by Rule 12(a). *See* Fed. R. Civ. P. 12(a)(1)(A)(i). The defendants affirmed this fact through an affidavit filed by Henry Callaway, their attorney. Doc. 10.[4] The Clerk of Court thus properly entered default against the defendants.

## IV.  The Plaintiffs Are Entitled to a Default Judgment Against the Defendants.

### A.  *The defendants are properly subject to default judgment.*

Rule 55(b)(1) prohibits the Clerk from entering default judgment against a defendant who is either a minor or an incompetent person. Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) permits the court to enter such judgment only when the person is represented by "a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). The plaintiffs maintain that the defendants are neither minors nor incompetents. In Mr. Callaway's affidavit supporting entry of default, he vouches, "Neither of the defendants is an infant or incompetent person." Doc. 10 at 2. He bases this conclusion on "knowledge of the facts stated herein." *Id.* at 1. Such a sworn affirmation adequately establishes that the defendants are neither minors nor incompetent for Rule 55 purposes. *See In re Ford*, No. R02-50780-PWB,

---

[4]Mr. Callaway incorrectly implies in his affidavit that 20 days – rather than 21 – is the prescribed responsive deadline under the Federal Rules of Civil Procedure. *Id.* at 1. As the defendants never answered the Complaint, Mr. Callaway's error is immaterial to this court's determination.

2009 WL 6499337, at *1 (Bankr. N.D. Ga. Mar. 3, 2009) ("An affidavit is a sworn, voluntary statement of facts. An individual cannot swear to facts not within her personal knowledge.").

> **B.  The plaintiffs have stated proper causes of action against the defendants.**

Rule 55(b)(2) allows the court to enter a default judgment when the Clerk has entered default and the party seeking judgment has applied to the court for a default judgment. Fed. Riv. Civ. P. 55(b)(2). To determine whether the moving party is actually entitled to a default judgment, the court must review the sufficiency of the Complaint and its underlying merits. *See Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (unpublished) (citing *Nishimatsu*, 515 F.2d at 1206). "[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (unpublished) (internal quotation marks, citation, and footnote omitted). However, the court has "an obligation to assure that there is a legitimate basis for any damage award it enters" and therefore cannot rotely accept the plaintiff's legal conclusions. *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (citations omitted). Rather, "the district court must ensure that the well-pleaded allegations in the complaint . . . actually state a substantive cause of action and that there is a

9

substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco*, 218 F. App'x at 863.

The plaintiffs are entitled to a default judgment against the defendants. In their Complaint, they claim that the defendants breached the respective contracts that the defendants formed with them. Doc. 1 ¶¶ 9-18. Under Alabama law, a plaintiff claiming breach of contract must prove the following elements:

- the existence of a valid contract between the plaintiff and the defendant;
- the plaintiff's performance under the contract;
- the defendant's failure to perform; and
- damage to the plaintiff.

"The elements of a valid contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)) (internal quotation marks omitted). "The rule is that the minds of the parties must meet as to all the essential features of a contract." *Air Conditioning Eng'rs, Inc. v. Small*, 259 Ala. 171, 175 (1953) (citations omitted). "[W]hether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." *Consolidated Pipe & Supply Co. v. City of Bessemer*, 69 So. 3d 182, 190 (Ala. Civ. App. 2010) (quoting

*SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co.*, 644 So. 2d 892, 895 (Ala.1994)) (internal quotation marks omitted).

Accepting as true the plaintiffs' well-pleaded factual allegations, they have sufficiently corroborated their claims against the defendants. The court will systematically review each claim to illustrate this conclusion.

### 1. Count One

In Count One, the plaintiffs allege that Gadsden Buggy[5] breached the "Master Services Agreement" it formed with ADP Dealer by failing to make the designated payments under the contract. Doc. 1 ¶ 9-10. To substantiate this claim, the plaintiffs attach to their Motion for Default Judgment an affidavit made by Phil Olson, ADP Dealer's Comptroller. Doc. 14.

Based on his personal knowledge, Mr. Olson vouches that Gadsden Buggy "has failed to make payments as called for by the agreement." *Id.* at 1. Mr. Olson attaches as an exhibit to his affidavit a "true and correct copy" of the "Master Services Agreement" signed between ADP Dealer and Gadsden Buggy on November 27, 2012. Doc. 14-1 at 2-34. The agreement includes a schedule of payments Gadsden Buggy was obligated to make to ADP Dealer in performance of the contract. *Id.* at 17-22.

---

[5]Gadsden Buggy was doing business as "Moultrie Toyota" at the time it formed all the contracts at issue in in this action. Doc. 1 ¶ 5.

Accepting as true the plaintiffs' factual claims, the defendant breached this agreement by failing to make the prescribed payments. The court will thus grant the plaintiffs default judgment on this count.

   2.   *Count Two*

In Count Two, the plaintiffs allege that Gadsden Buggy breached several equipment leases it formed with ADP Commercial by failing to make the designated payments under the contracts. Doc. 1 ¶ 11-12. The plaintiffs also allege that Mr. Moultrie guaranteed in writing Gadsden Buggy's obligations under the leases. *Id*. ¶ 13. To substantiate these claims, the plaintiffs attach to their Motion for Default Judgment an affidavit made by Kenneth Schlegel, ADP Commercial's Manager of Accounts Receivable. Doc. 15.

Based on his personal knowledge, Mr. Schlegel vouches that Gadsden Buggy has "failed to make payments as called for by each of the leases and is in default under each of the leases." *Id.* at 2. Mr. Schlegel attaches as exhibits to his affidavit the "true and correct" copies of the equipment leases signed by ADP Commercial, Gadsden Buggy, and Mr. Moultrie on February 28, 2013 and June 25, 2013. Doc. 15-1.

Accepting as true the plaintiffs' factual claims, the defendants breached these leases by failing to make the prescribed payments. The court will thus grant the

plaintiffs default judgment on this count.

       3.    *Count Three*

In Count Three, the plaintiffs allege that Gadsden Buggy breached the "Master Services Agreement" it formed with IP Networked by failing to make the designated payments under the contract. Doc. 1 ¶¶ 15-16. To substantiate this claim, the plaintiffs attach to their Motion for Default Judgment an affidavit made by Paul Breen, IP Networked's Senior Director of Finance. Doc. 16.

Based on his personal knowledge, Mr. Breen vouches that Gadsden Buggy "has failed to make payments as called for by the agreement." *Id.* at 1. Mr. Breen attaches as an exhibit to his affidavit a "true and correct copy" of the "Master Services Agreement" signed between IP Networked and Gadsden Buggy on November 13, 2012. Doc. 16-1. The agreement includes a price schedule delineating Gadsden Buggy's payment obligations under the contract. *Id.* at 22-25.

Accepting as true the plaintiffs' factual claims, the defendant breached this agreement by failing to make the prescribed payments. The court will thus grant the plaintiffs default judgment on this count.

       4.    *Count Four*

Finally, in Count Four, the plaintiffs allege that Gadsden Buggy breached the "Dealer Services Agreement" it formed with Dealix by failing to make the designated

payments under the contract. Doc. 1 ¶¶ 17-18. To substantiate this claim, the plaintiffs attach an affidavit to their Motion for Default Judgment made by Eric Pearson, Dealix's Comptroller. Doc. 17.

Based on his personal knowledge, Mr. Pearson vouches that Gadsden Buggy "has failed to make payments for referrals as provided by the master service agreement." *Id.* at 1. Mr. Pearson attaches as an exhibit to his affidavit a "true and correct copy" of the "Dealer Services Agreement" signed between Dealix and Gadsden Buggy on January 30, 2007. Doc. 17-1. The agreement includes a clause describing Gadsden Buggy's payment obligations under the contract. *Id.* at 1.

Accepting as true the plaintiffs' factual claims, the defendant breached this agreement by failing to make the prescribed payments. The court will thus grant the plaintiffs default judgment on this count.

**V.     The Court Will Grant the Plaintiffs $667,008.13 in Damages**.

   *A.     The defendants owe the plaintiffs $606,371.02 in contractual damages.*

Having concluded that the plaintiffs are entitled to default judgment on all of their claims, the court must now determine the damages that the defendants owe them. The plaintiffs request the following amounts, exclusive of attorney's fees and costs:

- $403,901.79 to ADP Dealer;
- $116,252.15 to ADP Commercial;

- $76,347.08 to IP Networked; and

- $9,870.00 to Dealix.

Doc. 13 ¶ 2. The plaintiffs corroborate these amounts by referencing the above affidavits filed by their respective financial personnel. In his affidavit on behalf of ADP Dealer, Mr. Olson vouches that (1) the past due balance on the company's agreement with Gadsden Buggy is $46,164.09; and (2) the contract balance for future payments – calculated at the 70% formula established in the agreement – is $357,737.70. Doc. 14 at 1-2. The total owed is therefore $403,901.79. *Id.*

In his affidavit on behalf of ADP Commercial, Mr. Schlegel attaches an itemized list of the amounts Gadsden Buggy and Mr. Moultrie owe (as of January 2014) under the three leases they formed with ADP Commercial. Doc. 15-1 at 22. This itemization includes the formula by which these amounts were calculated. *Id.* Under this formula, the respective amounts owed on the leases – including prejudgment interest to January 2014 – are: $70,701.86; $18,589.81; and $26,960.48. Doc. 15 at 2. These amounts, in turn, total $116,252.15. *Id.* at 3.

In his affidavit on behalf of IP Networked, Mr. Breen vouches that (1) the past due balance on the company's agreement with Gadsden Buggy is $10,567.91; and (2) the contract balance for future payments – calculated at the 70% formula established in the agreement – is $65,779.17. Doc. 16 at 1. The total owed under this agreement

is therefore $76,347.08. *Id.* at 2.

Finally, in his affidavit on behalf of Dealix, Mr. Pearson vouches that the balance owed on the agreement it formed with Gadsden Buggy is $9,870.00. Doc. 17 at 1.

Based on its review of the affidavits and attached documents, the court finds that these various calculations are accurate. Altogether, the defendants therefore owe the plaintiffs $606,371.02 – distributed along the lines outlined in the plaintiff's Motion for Default Judgment and set out earlier in this section.

### B. *The defendants further owe the plaintiffs $60,637.11 in attorney's fees and costs.*

Citing relevant provisions in the contracts under review, the plaintiffs also request recovery for attorney's fees and costs. Doc. 13 ¶ 4. In support of this request, they file an affidavit by Mr. Callaway. Doc. 18. In his affidavit, Mr. Callaway concludes that "a reasonable attorney's fee for each of the plaintiffs in this case would be 10% of the amount owed, which is reasonable considering the fact that much more work will be required to collect anything postjudgment." Doc. 17 at 2. He also documents that, as of January 2014, the plaintiffs have collectively incurred $15,362.00 in legal fees and $1,160.02 in legal expenses.[6]

---

[6] Mr. Callaway originally recorded these respective amounts as $13,175.00 in legal fees and $517.66 in legal expenses. Doc. 18 at 1-2. However, he later filed a correction with the

Mr. Callaway derives his 10% estimate from the fact that Gadsden Buggy is apparently insolvent. In his judgment, the dealership's secured debt to Bank of America – another one of its creditors – "far exceeds the value of the dealership's assets." Doc. 18 at 2. Nevertheless, Mr. Callaway predicts that his clients might be able to pursue Mr. Moultrie's assets to satisfy their prospective judgment. *Id.* He foresees that these efforts will include "recording the judgment, deposing Steve Moultrie, investigating his assets, and garnishing or executing as appropriate." *Id.* Mr. Callaway bases this conclusion on his "experience in suing on notes in Alabama and on the factors set out in the case of *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S 87 (1989)." *Id.* Mr. Callaway then systematically applies the *Johnson* factors to the present case to illustrate why his 10% request is reasonable. *Id.* at 3-4.

The court finds Mr. Callaway's affidavit arguments persuasive and thus agrees that 10% is a reasonable request. Accordingly, the court will respectively grant the plaintiffs the following amounts in attorney's fees and costs:

- $40,390.18 to ADP Dealer;

- $11,625.22 to ADP Commercial;

- $7,634.71 to IP Networked; and

---

above amounts, indicating that he had misread his firm's billing records. Doc. 19 at 1-2.

- $987.00 to Dealix.

*See* Doc. 13 ¶ 5. The court will enter a default judgment order contemporaneously with this opinion reflecting these awards.[7]

**DONE** this the 9th day of April, 2014.

*[signature]*
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7]In their Complaint, in addition to their damages request, the plaintiffs also asked the court to issue an order for possession of the equipment ADP Commercial leased to Gadsden Buggy under their agreements. Doc. 1 ¶ 14. In their Motion for Default Judgment, however, the plaintiffs noted that they have since arranged to pick up the leased equipment at the dealership. Doc. 13 ¶ 3. They thus ask the court to deny this relief without prejudice. *Id.* Accordingly, the court will **DENY WITHOUT PREJUDICE** the plaintiff's request for an order of possession.